**FILED**
**Mar 10, 2026**
**10:13 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





# TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | |
|---|---|
| **STEPHEN JABLONSKI,** ) | **Docket No. 2025-50-6465** |
| **Employee,** ) | |
| **v.** ) | **State File No. 5424-2024** |
| **SWIFT TRANSPORTATION CO.** ) | |
| **OF ARIZONA, LLC,** ) | **Judge Thomas Wyatt** |
| **Employer.** ) | |

---

## EXPEDITED HEARING ORDER

---

In a February 25, 2026 expedited hearing, Stephen Jablonski sought a panel of joint-replacement specialists to consider whether he needs knee-replacement surgery. Swift Transportation argued that a panel of general orthopedists it already offered complies with the law and the issue is not ripe because the treating physician did not order replacement of Mr. Jablonski's knee.

For the reasons below, the Court finds that Mr. Jablonski will likely prevail at a compensation hearing in showing his entitlement to a panel of joint-replacement specialists. The Court refers Swift to the Bureau's Compliance Program for consideration of a penalty for its failure to provide a proper panel.

### History of the Claim

Mr. Jablonski fell on ice, breaking the right tibia and fibula where they meet to form the knee joint. He selected orthopedist Dr. David Mayfield from a panel, who surgically repaired the breaks with a bone graft and a plate and pins.

Mr. Jablonski improved after surgery but could never straighten his right knee. Dr. Mayfield diagnosed posttraumatic arthritis and placed him at maximum medical improvement with a return to work.

1

In March 2025, Mr. Jablonski sought another medical opinion about his treatment options because he felt Dr. Mayfield wanted to treat him with "band aids" instead of knee-replacement surgery. This physician diagnosed posttraumatic arthritis and recommended right-knee replacement because Mr. Jablonski's ongoing problems substantially interfered with his enjoyment of life and daily activities.

Mr. Jablonski then returned to Dr. Mayfield to report his worsening problems and ask for a knee replacement. New x-rays showed more extensive, now moderate, posttraumatic arthritis. Dr. Mayfield signed an order referring Mr. Jablonski to an "adult reconstructive orthopedic surgeon," designating Dr. Andrew Bae, a joint replacement surgeon with advanced training. The referral was not an order for Dr. Bae to perform the surgery, but for him to use his advanced training in deciding whether knee-replacement surgery was appropriate and, if so, to perform it. Dr. Mayfield explained that, while he does knee-replacement surgery himself, he would not do Mr. Jablonski's because the presence of hardware in his knee joint makes the replacement surgery more complex.

Dr. Mayfield testified that replacement surgery is not the first option for treating posttraumatic knee arthritis. He had already ordered medication, bracing, and physical therapy and could also treat the knee with injections. He took Mr. Jablonski's request for a knee replacement into account in making the referral to Dr. Bae. He could continue to treat if Mr. Jablonski did not undergo knee-replacement surgery.

Swift did not authorize the referral to Dr. Bae but gave Mr. Jablonski a panel of general orthopedists six days after the referral order was signed.[1] Mr. Jablonski did not select a physician from the panel, and nothing happened for several months. Eventually, Swift tried to make an appointment with Dr. Bae, only to learn that he had relocated his practice. After that, it insisted that Mr. Jablonski select a physician from the panel.

In December, Mr. Jablonski sent inquiries to the panel physicians to determine if they perform knee replacements. Only one of the two who responded did knee-replacement surgery. He filed this case and requested an expedited hearing, which the Court set for an in-person hearing.

---

[1] The record is unclear when Swift received the referral from Dr. Mayfield's office.

A few days before this hearing, Swift moved for an extension of the deadline for filing evidence because it did not think the transcript of Dr. Mayfield's deposition would be received on time. During the motion hearing, the parties confirmed the transcript had been filed and that Mr. Jablonski would be the only witness to testify at the expedited hearing. The Court decided to conduct the hearing by videoconference and notified the parties of that fact.

Swift filed written objections to the virtual hearing and the lack of an order setting it. Mr. Jablonski responded with his agreement to the virtual hearing. Before the hearing, the Court heard argument on Swift's objection and overruled it.[2]

Mr. Jablonski testified that he still cannot straighten his right knee. As a result, he stands and walks unevenly and bears more weight on his left leg. He experiences pain while walking relatively short periods such as with grocery shopping, and he must break up yard work because of right-knee pain. He wants knee-replacement surgery now so he can return to his normal activities with less pain.

Mr. Jablonski agreed that Dr. Mayfield did not order knee-replacement surgery. However, after seeing his own doctor, Mr. Jablonski became convinced that he needed it. When Swift would not authorize him to change to that doctor, he returned to Dr. Mayfield to request knee replacement.

Mr. Jablonski argued that he should prevail because Swift has not complied with Dr. Mayfield's referral for more than ten months. He should not have to select a physician from Swift's panel because it is not composed of three reconstructive orthopedic surgeons, as Dr. Mayfield designated. Also, the panel does not comply with the law because one of the physicians on it does not perform knee-replacement surgery. He contended the Court should refer Swift for a penalty.

Swift contended that its panel of general orthopedists complies with the law because the statute describes referrals to "specialists" and "surgeons," and the physicians on the panel are orthopedic surgeons. It also argued that the panel issue is not ripe for decision because of Dr. Mayfield's failure to order knee-replacement surgery.

---

[2] The virtual hearing removed any concerns about the Court being unable to observe Mr. Jablonski's demeanor. The Court did not issue an order because it originally set the expedited hearing by docket notice and, in the motion hearing, gave the parties verbal notice of the virtual hearing. The Court confirmed the verbal notice in writing.

3

**Findings of Fact and Conclusions of Law**

To recover the requested panel of reconstructive orthopedic surgeons, Mr. Jablonski must show that he will likely prevail at a compensation hearing that Dr. Mayfield made a valid referral under the law and the panel provided by Swift does not comply with the referral. Tenn. Code Ann. § 50-6-239(d)(1) (2025).

Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii), governing referrals, states,

> *When necessary*, the treating physician [selected from a panel] shall make referrals to a specialist physician, surgeon, or chiropractor and immediately notify the employer. The employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable [surgeons]. In this case, the employee may choose a specialist physician, surgeon, or chiropractor to provide treatment only from the panel provided by the employer.

(Emphasis added).

The above language gives an employee access to specialty or surgical care when the treating physician determines that the treatment of the work injury goes beyond his or her expertise. Here, the panel-selected treating physician, Dr. Mayfield, determined it was necessary that Mr. Jablonski see a "reconstruction orthopedic surgeon" to determine if he needed a knee replacement and, if so, to perform the surgery. Dr. Mayfield did this because, although he performs non-complex knee replacements, the presence of hardware in Mr. Jablonski's knee makes replacement of his knee more complicated than those he performs himself. Under the law, Swift had an obligation to authorize the referral to Dr. Bae or provide a panel of reconstruction orthopedic surgeons.

Swift did neither. Instead of authorizing the referral to Dr. Bae, it provided a panel of general orthopedists. One surgeon on that panel does not perform knee-replacement surgery. Several months went by with no resolution of the referral issue. Eventually, Swift attempted to set an appointment with Dr. Bae, only to learn that he was unavailable because he relocated his practice. After that, it insisted that Mr. Jablonski select a physician from the panel of general orthopedists. He has declined to do so and for a valid reason.

In consideration of the above, the Court finds that Mr. Jablonski will likely prevail at trial by showing that the referral statute obligates Swift to offer a panel of reconstruction orthopedic surgeons. Swift's attempt to sidestep its obligations under the referral statute by providing a panel of general orthopedists, including one who does not perform knee-replacement surgery, is misplaced.

The argument that the referral statute permits an employer to replace a direct referral specialist with a panel comprised of any physicians in the same general specialty as that designated by the treating physician is without merit. The statute's use of the words "specialist" and "surgeon" does not enable an employer to override the specific requirements of the treating physician's referral. Moreover, Tennessee Compilation Rules and Regulations 0800-02-01-.06(1) (2018) states that a "medical provider must be qualified, willing, and able to treat in a timely manner the injury or condition reported to be listed on a panel." Swift's provision of a panel of general orthopedists, one of whom does not perform knee-replacement surgery, instead of a panel of joint reconstruction orthopedic surgeons, violates this rule and improperly seeks to usurp the authority of the treating physician.

Swift's argument that the referral issue is not ripe for decision because Dr. Mayfield did not order knee-replacement surgery is also unconvincing.

The referral statute entitles an employee to see a specialist when necessary. Here, the necessity for Mr. Jablonski to see a joint-replacement specialist arises from Dr. Mayfield's decision that ongoing treatment of his right knee requires medical decision-making and, perhaps, surgery beyond that which Dr. Mayfield can provide. This necessity, not Dr. Mayfield's order for knee replacement, is what triggers the employer's obligations under the referral statute.

Here, the authorized treating physician, Dr. Mayfield, referred Mr. Jablonski to a joint-replacement specialist. Swift has not complied with the referral for ten months and forced Mr. Jablonski to seek a Court order to obtain the treatment to which he is entitled by statute. *See Rooks v. Amazon.com,* 2025 TN Wrk. Comp. App. Bd. LEXIS 20, at *11 (May 20, 2025) (honoring a referral is a "statutorily-mandated" obligation). For this reason, the Court refers Swift and its carrier to the Bureau's Compliance Unit for assessment of a penalty for failure to timely provide medical treatment recommended by the authorized treating physician. *Id.* § 50-6-118(a)(11).

5

**IT IS, THEREFORE, ORDERED** as follows:

1. Swift shall offer Mr. Jablonski a panel of joint-reconstruction orthopedic surgeons in his community so he can select a physician to comply with Dr. Mayfield's referral.  Swift shall submit the panel no later than seven business days after entry of this order.

2. The Court refers Swift and its carrier to the Bureau's Compliance Unit for assessment of a penalty.

3. The parties shall appear for a status hearing on **June 17, 2026, at 1:00 p.m. Central Time/2:00 p.m. Eastern Time**.  They must call (615) 741-3061 or (855) 747-1721 to participate.  Failure to call might result in a determination of the issues without the party's participation.

4. Unless appealed, compliance with this order must occur by **<u>seven</u>** business days of entry of this order as required by Tennessee Code Annotated section 50-6-239(d)(3).

**ENTERED March 10, 2026.**


_____
*Thomas Wyatt*

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

# APPENDIX

<u>Exhibits:</u>
1. Affidavit of Stephen Jablonski
2. Panel Form dated January 31, 2024
3. Panel Form dated April 14, 2025
4. Transcript of the deposition of Dr. William Mayfield, with exhibits
5. Resignation letter
6. Faxes sent to Drs. Kaminski and Petty, with responses (overruled hearsay and lack of foundation objections)
7. Records of Dr. Matthew Cavallero
8. Employee's responses to interrogatories
9. Employee's responses to requests for admissions
10. Transcript of deposition of Stephen Jablonski (lines specified by Swift)

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the order was sent as indicated on March 10, 2026.

| Name | U.S. Mail | Email | Service sent to: |
|---|---|---|---|
| Jill T. Draughon<br>Employee's Attorney | | | jdraughon@hughesandcolemand.com<br>sconner@hughesandcoleman.com |
| Jenna Finbloom<br>Employer's Attorney | | X | jcfinbloom@mijs.com |
| Compliance Program | | X | WCCompliance.Program@tn.gov |

_____
**Penny Shrum, Court Clerk**
Wc.courtclerk@tn.gov

7



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____       ☐ Motion Order filed on _____

☐ Compensation Order filed on_____       ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*